IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| John W. Johnson, as the administrator of the John Wesley Johnson PS Define Benefit Pension Plan, <br><br> Plaintiff, <br><br> vs. <br><br> The North Dakota Guaranty and Title Co., <br><br> Defendant. | **ORDER** <br><br> Case No. 1:17-cv-120 |

Before the court is a Motion for Stay of All Proceedings filed by defendant on September 6, 2018. For the reasons set forth below, the motion is granted.

I. **BACKGROUND**

This action arises out of an alleged error made an agent of the North Dakota Guaranty and Title Company ("NDG&T") when recording a mortgage obtained by the John Wesley Johnson PS Define Benefit Pension Plan against Lot 2R, Block 10, Madison Ridge Subdivision in Williams County, North Dakota (hereafter referred to as the "Subject Property"). It was initiated by Complaint on June 8, 2017, by John W. Johnson in his capacity as the aforementioned plan's administrator.[1] Johnson alleges:

- On or about December 13, 2013, Clear Creek Retirement Plan ("CCRP") granted Johnson a mortgage against the Subject Property. Said mortgage was recorded on February 5, 2014.

- CCRP subsequently contacted the Johnson to (1) advise that the mortgage was recorded

---

[1] The court shall hereafter refer to the pension plan and its administrator collectively as "Johnson."

1

in the incorrect lien position, and (2) request that the mortgage be satisfied and a replacement mortgage be recorded in the correct fifth lien position.

- Johnson contacted an escrow agent with NDG&T with instructions to record a replacement mortgage in the fifth lien position, and upon confirmation that the replacement mortgage was so recorded, to record a satisfaction of the original mortgage.

- The replacement mortgage was recorded by the escrow agent, albeit not in the fifth lien position per Johnson's instructions. At the time this mortgage was recorded, the fair market value of the Subject Property was reported by CCRP to be approximately $450,000.

- Johnson contacted the escrow agent with further instructions. Specifically, he directed the escrow agent to record a second replacement mortgage. He further directed the escrow agent to record a satisfaction of the first replacement mortgage upon receiving confirmation that the second replacement mortgage had been recorded in the fifth lien position. Finally, he directed that a lender's title insurance policy be forwarded with the recorded second replacement mortgage.

- The second replacement mortgage was ultimately recorded in the eighth lien position, putting it behind approximately $1,367,200 in senior mortgage claims.

- NDG&T did not advise Johnson that its escrow agent had not recorded the second replacement mortgage in the fifth lien position and did not provide Johnson with a lender's title insurance policy.

- The fair market value of the Subject Property is not sufficient to secure any portion of Johnson's second replacement mortgage as presently recorded. If the second

replacement mortgage had been recorded in the fifth lien position as directed, Johnson would have been adequately secured.

(Doc. No. 1). Johnson seeks to recover damages from NDG&T under the theories of negligence, breach of contract, and breach of fiduciary duty.

On September 6, 2018, NDG&T filed a motion to stay of the instant action pending resolution of a State foreclosure action initiated by Robert and Shannon Doremus against individuals and/or entities, Johnson included, with interest in and/or liens against the Subject Property.

On September 20, 2018, Johnson filed a response in opposition to NDG&T's motion on the grounds that a stay is both unnecessary and unduly prejudicial.

## II.     APPLICABLE LAW

"A district court has broad discretion to stay proceedings when appropriate to control its docket, converse judicial resources, and ensure the matter is handled with economy of time and effort for itself, counsel, and litigants. Assn' of Equip. Manufacturers v. Burgum, No. 1:17-cv-151, 2018 WL 1773 145, at *1 (D.N.D. March 5, 2018) (citing Clinton v. Jones, 520 U.S. 681, 706 (1997); Sierra Club v. U.S. Army Corps of Engineers, 446 F.3d 808, 816 (8th Cir. 2006); Barnes v. Zurn Pex, Inc., No. 1:07-cv-74, 2008 WL 111217, *2 (D.N.D. Jan. 9, 2008) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936))). The consideration to stay proceedings involves an "exercise of judgment, which must weigh competing interests and maintain an even balance." Id. (citing Barnes, 2008 WL 111217 at *2). Factors for the court's consideration include but are not limited to the conservation of judicial resources, whether the stay would unduly prejudice or give a clear tactical advantage to one party, and whether a stay will simplify the issues in question and the trial of the case. See Wells Fargo Ins. Servs. USA, Inc. v. Kyle King & Sherman Ins. Agency, Inc., No.

15-CV-4378, 2016 WL 6892108, at *3 (D. Minn. July 29, 2016); Frable v. Sychrony Bank, 215 F. Supp. 3d 818, 821 (D. Minn. 2016).

III. **DISCUSSION**

The Doremuses initiated the state foreclosure action by Complaint in December 2017, claiming they have a valid and perfected fourth lien against the Subject Property that is prior and superior to the interests and/or liens held by Johnson and the other named defendants. (Id.). They are requesting that the state district court declare as much and determine the amount to which they are entitled under the terms and conditions of their mortgage, that their mortgage be foreclosed, and that the Subject Property be sold at a Sheriff's sale upon expiration of the redemption period. (Id.).

Johnson has entered an appearance in the state foreclosure action, filed an answer in which he denies that his mortgage is inferior and subordinate to the Doremuses' mortgage, and asserts multiple counterclaims and cross claims against Robert Doremus and CCRP, respectively.[2] Johnson is seeking, amongst other things, the equitable subordination of the Doremuses' mortgages to the liens and interests of all the named defendants save two with alleged ties to the Doremuses

NDG&T takes the position that a stay of the instant action is only logical as the resolution of the foreclosure action filed by the Doremuses in state district court (hereinafter simply referred to as the "State litigation") will dictate Johnson's alleged damages in the instant action or otherwise render the instant action moot.

Johnson counters that a stay of the instant action would be lengthy given the present posture of the State litigation and therefore unduly prejudicial, that the State litigation should not obscure

---

[2] Johnson asserts, amongst other things, that Robert Doremus and CCRP acted in concert to manipulate the recording process in favor of Doremuses' mortgage and that CCRP committed a fraud by deceiving him about the security of his investment in the Subject property.

the fact that he has suffered ascertainable damages, and that his participation in State litigation to, amongst other things, correct NDG&T's error and mitigate his damages should not be used to further delay his recovery. He further asserts that the State litigation need not be resolved as his damages are presently calculable from the date his mortgage was recorded based upon the application of N.D.C.C. §§ 32-03-13 and 32-03-32.

Section 32-02-13 speaks to damages for breach of an agreement to convey realty: Specifically, it provides:

> The detriment caused by the breach of an agreement to convey an estate in real property is the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach and the expenses properly incurred in examining the title, and in preparing to enter upon the land, and the amount paid on the purchase price, if any, with interest thereon from the time of the breach.

N.D.C.C. § 32-02-13. Section 32-03-32 provides that, when estimating damages, "the value of property to a buyer or owner thereof deprived of its possession is deemed to be the price at which the buyer or owner might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into such person's possession, and at such time after the breach of duty upon which that person's right to damages is founded as would suffice with reasonable diligence for that person to make such a purchase." N.D.C.C. 32-03-32.

The court finds Johnson's reliance on N.D.C.C. § 32-03-13 to be misplaced. He is not asserting a claim in the instant action for breach of an agreement to convey real property. Morever, he has not cited any authority for the proposition that State law addressing damages for a breach of an agreement to convey real property is applicable in the context of a claim for damage flowing from an alleged breach of a service agreement.

The court further finds that interests of judicial economy and the allocation of the resources

5

weighs in favor of granting a stay as does the reality that resolution of the state foreclosure may dispose some or all of the issues in the instant case. The State litigation includes everyone with a lien against the Subject Property and relates to the priority of these liens. Second, the amount that Johnson stands recover in the instant action should he prevail on the issue of NDG&T's liability is largely dependent upon the priority of his mortgage on the Subject Property and thus the outcome of the State litigation.

## IV. CONCLUSION

NDG&T's motion for stay (Doc. No. 14) is **GRANTED.** The above-entitled action shall be stayed pending resolution of the State litigation.

**IT IS SO ORDERED.**

Dated this 20th day of December, 2018.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court